# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**PATRICK H HUGHES**,<br><br>Debtor. | Case No. **12-61143-7** |
| **SHANE C BUCHER**,<br><br>Plaintiff.<br><br>-vs-<br><br>**PATRICK H HUGHES**,<br><br>Defendant. | Adv No. **12-00048** |

## MEMORANDUM OF DECISION

At Butte in said District this 26th day of February, 2013.

In this adversary proceeding the Plaintiff Shane C. Bucher seeks exception from the discharge[1] of the Defendant/Debtor Patrick H. Hughes ("Hughes"), under 11 U.S.C. § 523(a)(9), the sum of $36,929.71 for personal injuries caused by Hughes' operation of his motorcycle vehicle while intoxicated. Hughes' answer denies that intoxication was proven. He argues that the alcohol charges were dismissed and that § 523(a)(9) does not apply. Plaintiff has filed a motion for summary judgment, to which Defendant filed an objection. Oral argument on the motion was heard at Butte on January 30, 2013. Plaintiff was represented by attorney Lawrence A. Anderson ("Anderson") of Great Falls, Montana. Defendant filed an amended answer on

---

[1]The Complaint is entitled "Complaint Objecting to Debtor's Discharge." However, the prayer makes clear that Plaintiff is seeking an exception of his debt from discharge under 11 U.S.C. § 523(a)(9), not objecting to discharge under 11 U.S.C. § 727.

1

January 29, 2013[2], and was represented at oral argument by attorney Gregory W. Duncan ("Duncan") of Helena, Montana. The Court heard argument of counsel, after which the Court took Plaintiff's motion for summary judgment under advisement. After review of the record and applicable law, for the reasons set forth below Plaintiff's motion for summary judgment will be granted and judgment entered against Hughes excepting the unpaid balance of the $29,463.70 judgment, plus interest, from Defendant's discharge.

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding to determine dischargeability of particular debts under 28 U.S.C. § 157(b)(2)(I) and § 523(a)(9). This Order contains the Court's findings of fact and conclusions of law pursuant to F.R.B.P. 7052.

## FACTS

Plaintiff filed his amended motion for summary judgment on December 11, 2012, with a supporting amended brief, Anderson's affidavit and exhibits. Within the supporting brief, Dkt. 13, from pages 2 to 7, are Plaintiff's Statements of Undisputed Facts ("SOUF") setting forth the following:

<u>Statement of Undisputed Procedural Facts</u>

1. Hughes struck Shane Bucher, a pedestrian, who was walking across the street. Bucher suffered major injuries from the collision, including severing his left leg at the knee. (Complaint, ¶6, Answer, ¶1)

2. The State of Montana charged Hughes with negligent vehicular assault, driving under the influence of alcohol, and driving without a motorcycle license.

---

[2]Anderson filed an amended motion to strike the amended answer on February 20, 2013. The notice period on that motion has not expired. However, with this Memorandum of Decision the amended motion to strike, and Defendant's motion for telephonic conference filed on February 26, 2013, both may be moot.

(Complaint, ¶7, Answer, ¶1)

3. Hughes eventually entered a guilty plea to the charge of negligent vehicular assault in 2003. (See Complaint Ex. 3, Entry of Plea/Sentencing and Plea Agreement) (Complaint, ¶9, Answer, ¶1)

4. The District Court committed Hughes to the Montana Department of Corrections for a term of six years, with all time suspended. (Complaint, ¶10, Answer, ¶1)

5. The Court further ordered Hughes to pay restitution in the amount of $2,718 for Bucher's medical expenses, and $34,415.70 for his lost wages, for a total obligation of $37,133.70. (See Complaint Ex. 4, Judgment) (Complaint, ¶11, Answer, ¶1)

6. Thereafter, the Court ordered restitution was reduced to a civil judgment in 2009 in the amount of $29,463.70, entitled *Shane Bucher v. Patrick Harold Hughes,* Cause Number DC-01-028, Montana Ninth Judicial District Court, Toole County. (See Complaint Ex. 5, Civil Judgment) (Complaint, ¶12, Answer, ¶1)

7. Mr. Bucher has received one restitution check in the amount of $227.43 issued by the State of Montana, Department of Corrections, dated April 4, 2012. (Complaint, ¶14, Answer, ¶1)

8. Hughes filed bankruptcy on July 14, 2012, listing the debt to Mr. Bucher on Schedule F, Creditors Holding Unsecured Nonpriority Claims (See Schedule F, pages 13 and 14 of Patrick Hughes' Voluntary Petition (Doc. #1 of 12-61143-RBK))

Statement of Undisputed Substantive Facts

Many of the following facts were derived from a civil action entitled Shane C. Bucher v. Toole County, and Town Pump, Inc…., Cause Number DV-03-129, Montana Second Judicial District, Silver Bow County, in which Hughes was named as a third party defendant. (Anderson Affidavit, Ex. A, Order Granting Motions, dated June 15, 2004, Judge Kurt Krueger)

9. At 2:00 a.m. on June 23, 2001, a number of friends had just left the Alibi Bar in Shelby. Plaintiff Shane Bucher and a young woman were standing on the street near a parked car. The woman states that she heard a motorcycle approaching with "open barrels." Plaintiff turned to face the motorcycle and was struck head on. (Anderson Affidavit, Exhibit B, Montana Department of Justice Investigative Report, pp. 1, 18-19, 21)

3

    10. A highway patrolman who investigated the episode estimates the motorcycle's speed at 50-65 miles per hour. (Anderson Affidavit, Ex. C, Crash Investigator's Report, p. 1; Anderson Affidavit, Ex. D, Vollrath Deposition p. 18) The impact severed Plaintiff's left leg at the knee and flung the severed leg almost 200 feet. (Anderson Affidavit, Ex. C, p. 2; Anderson Affidavit, Ex. D, pp. 15-16)

    11. The driver of the motorcycle was Patrick Hughes, an off-duty Toole County deputy sheriff. Hughes was transported to the hospital, where two nurses described him as drunk. One states that he was staggering and needing to use much of the hallway in entering the building. The other describes him as combative and objecting to being treated. (Anderson Affidavit, Ex. E, Frydenlund Deposition pp. 7, 8, 9, 10, 14; Anderson Affidavit, Ex. F, Schultz Deposition pp. 8, 9, 10, 11, 15, 17, 31)

    12. At the time of the event, the Forensic Science Division, Department of Justice, State of Montana analyzed debtor Patrick Hughes' blood and found the blood alcohol result to be 0.14 GM/100 ML. (See Complaint Ex. 2, State of MT's blood analysis report)

    13. A Forensic Toxicologist, Dr. Bryan S. Finkle, examined the evidence and found:

> It is my understanding that Patrick Hughes was involved in a motorcycle accident at approximately 2.00am on June 23rd 2001. He began drinking at about 6.00pm June 22nd 2001 and consume not less than 4 beers and then 2.5 glasses of beer with Pizza, followed by another beer at a friends house, concluding at about 10.00pm. He arrived at the Casino at 11.46 pm and over the following 45 minutes consumed 5 beers. Shortly after midnight he arrived at the Sheriff's office and remained there until 1.30am. At about 1.30am or shortly thereafter he arrived at Mr. Gates house and at about 2.00 am took Mr. Gates' motorcycle and crashed minutes later on Main Street, Shelby, injuring Mr. Bucher.
>
> A blood sample drawn at the hospital at 3.09am indicated Mr. Hughes blood alcohol concentration to be 0.18%. A blood sample drawn at 3.30am and analyzed at the State Forensic Science Laboratory indicated Mr. Hughes blood alcohol concentration to be 0.14%.
>
> Assuming the facts of alcohol consumption described above and a body weight of 195#s for Mr. Hughes he would have had a blood

4

> alcohol concentration (BAC) of approximately 0.07% when he arrived at the Casino and .015% when he left. His BAC would have been at lease 0.14% when he arrived at the Sheriff's Office, and about the same or slightly greater when he arrived at Mr. Gates house. Mr. Hughes was under the influence of alcohol throughout this period. Given his drinking history he may not have exhibited overt signs of intoxication when he first arrived at the casino but by the time he left, having consumed 5 beers in just 45 minutes and at a BAC of 0.15%, he would have shown some visible signs of drunkenness. His maximum BAC would have occurred about one hour after his last drink; that is, about the time he was at the Sheriff's office.
>
> Assuming the accuracy of both the hospital and forensic laboratory BAC values then at the time of the accident Mr. Hughes would have had a BAC of between 0.17% and 0.20%; that is equivalent to between 9 and 11 beers (5% 12 fl.oz.)
> circulating in his body.
>
> At the time the blood samples were drawn Mr. Hughes had the equivalent of 7.5 and 10 beers circulating in his body.  Mr. Hughes was under the influence of alcohol from the time he was at the Casino until the accident, his degree of intoxication increasing during this period. At the time of the accident his ability to operate a motorcycle was severely impaired.  Even by his own recollection of the number of beers he consumed Mr. Hughes was intoxicated by the time he left the Casino and continuously until the accident.

(Dr. Bryan S. Finkle, PhD. Report, dated October 20, 2004;

Deposition of Bryan Finkle, Ph.D., dated March 1, 2005)

The Defendant filed an objection to Plaintiff's amended motion for summary judgment. However, Defendant did not file a separate, short and concise "Statement of Genuine Issues" setting forth the specific facts which he asserts establish a genuine issue of material fact precluding summary judgment in favor of the moving party, as required by Montana Local Bankruptcy Rule ("Mont. LBR") 7056-1(a)(2).  Mont. LBR 7056-1(a)(3) provides: "Facts Admitted.  All material facts in the moving party's Statement of Uncontroverted Facts are

5

deemed to be admitted unless controverted by a Statement of Genuine Issues filed by the opposing party." At oral argument the Court asked Defendant's counsel why he did not file a Statement of Genuine Issues as required by Mont. LBR 7056-1(a)(2). Duncan answered that he thought the Defendant would be permitted to offer testimony and exhibits at oral argument. The Court did not allow it.

Ignorance of court rules does not constitute excusable neglect, even if a litigant appears pro se. *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (*quoting Swimmer v. IRS*, 811 F.2d 1343, 1345 (9th Cir. 1987)). In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership ("Pioneer")*, 507 U.S. 380, 392, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the United States Supreme Court stated that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect".

Defendant's attorney Duncan has practiced in this bankruptcy court for several years, and knows or should know the local rules. Moreover, a person who has consulted with an attorney "can be charged with constructive knowledge of the law's requirements." *Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1050 (9th Cir.1987). The practice in this Court for responding to a motion for summary judgment and SOUF are as specifically set forth in LBR 7056-1(a)(2), as is the consequence that all material facts in the moving party's SOUF are deemed to be admitted unless controverted by a Statement of Genuine Issues filed by the opposing party. Mont. LBR 7056-1(a)(3).

The Defendant voluntarily selected Duncan as his attorney of record, and he cannot now

6

avoid the consequences of the acts or omissions of his freely-selected attorney[3]. *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. at 396-97; *Link v. Wabash Co.*, 370 U.S. 626, 633-34 (1962); *In re Casey*, 193 B.R. 942, 949 (Bankr. S.D. Cal. 1996). Based on the Defendant's failure to file a statement of genuine issues, by operation of Mont. LBR 7056-1(a)(3) all material facts in the Plaintiff's SOUF are deemed to be admitted.

## DISCUSSION

The Complaint seeks exception from Defendant's discharge pursuant to § 523(a)(9). Exceptions to discharge should be strictly construed against an objecting creditor and in favor of a debtor in order to effectuate the fresh start policy afforded by the Bankruptcy Code. *Moore v. United States Department of Education, et al.*, 17 Mont. B.R. 106, 108 (Bankr. D. Mont. 1998); *In re Klapp*, 706 F.2d 998, 999 (9th Cir. 1983). The standard of proof for the dischargeability exceptions under § 523(a) is by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991); *Donath v. Sage*, 15 Mont. B.R. 40, 43

---

[3] The same principle requires that the Defendant not be allowed to amend his answer, as a means to avoid the consequences of his failure to file a statement of genuine issues. The deadline for amendments to the pleadings was November 9, 2012, set by this Court's Order entered on November 7, 2012. Defendant did not request an extension of time to file an amended answer, and filed the amended answer the day before oral argument, long after the deadline. The Court acknowledges the policy to freely give leave to amend when justice so requires. However, in these circumstances that policy runs up against the policy of holding parties responsible when they fail to follow rules, orders and deadlines of the court. In addition, Defendant's amended answer added little more than an affirmative defense 9: "Excepting the debt from discharge would impose an undue hardship on the debtor and debtor's dependents." That language similar to an exception from 11 U.S.C. § 523(a)(8) (student loans). There is no such clause in § 523(a)(9). "Where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208, 113 S.Ct. 2035, 2040, 124 L.Ed.2d 118 (1993) (internal quotation marks and alterations omitted). Therefore, Defendant's amended answer will not delay the decision in this case or provide any relief from LBR 7056-1(a)(3).

(Bankr. D. Mont. 1995).

Section 523(a)(9) excepts from discharge any debt "for death or personal injury caused by the debtor's operation of a motor vehicle, vessel, or aircraft if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance". This statute evidences the clear intent of Congress to prevent drunken drivers from escaping liability by discharging debts in bankruptcy. *Stackhouse v. Hudson (In re Hudson)*, 859 F.2d 1418, 1420 (9th Cir. 1988). The Ninth Circuit Bankruptcy Appellate Panel in *In re Waag*, 418 B.R. 373, 380-81 (9th Cir. BAP 2009) repeated the principle from *Hudson* and noted that bankruptcy courts have unanimously concluded that a creditor's drunk driving claim did not have to be reduced to judgment or consent decree before a debtor filed for bankruptcy in order to have a debt declared nondischargeable under 11 U.S.C. § 523(a)(9). Thus, it does not matter to Plaintiff's § 523(a)(9) claim that the state court dismissed the charge against Hughes of driving under the influence.

In order to except a debt from discharge pursuant to § 523(a)(9) a court must find (1) that a personal injury or death occurred; (2) as a result of a motor vehicle accident; (3) caused from a debtor's operation of a motor vehicle while (4) unlawfully intoxicated by alcohol, a drug or another substance. *Tafoya, et al. v. Turner*, 15 Mont. B.R. 110, 112 (Bankr. D. Mont. 1996). Defendant's objection only contested the fourth element. His pleadings admitted the first three.

Paragraph 1 of Defendant's answers admits paragraph 6 and 9 of the complaint wherein Plaintiff alleged that he was injured as a result of Hughes colliding with Plaintiff while Hughes was operating a motor vehicle; and Hughes entered a guilty plea to the charge of negligent vehicular assault. He further admitted paragraphs 11 and 12 that the state district court ordered Hughes to pay restitution, for which a civil judgment was entered in 2009 in the sum of $29,463.70, and Plaintiff received one restitution check in the amount of $227.43 in 2012.

Only the fourth element was contested by the Defendant in his objection, where he argues that legal intoxication was never proven. However, because Hughes failed to file a statement of genuine issues, by operation of LBR 7056-1(a)(3) Plaintiff's SOUF Fact Nos. 11, 12 and 13 are deemed admitted. Those facts establish that Hughes was observed intoxicated by alcohol immediately after he injured the Plaintiff by two nurses, and his BAC was measured above the legal intoxication limit by the Forensic Science Division of the Montana Department of Justice, and by an independent forensic toxicologist. Defendant argues that these statements are hearsay and inadmissible, and that a trial is required to determine whether he was unlawfully intoxicated. His argument ignores the process of summary judgment.

Summary judgment is governed by FED. R. BANKR. P. 7056. Rule 7056, incorporating FED. R. CIV. P. 56(c), states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)).

When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback*

9

*& Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); FED. R. CIV. P. 56(e). *See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute"). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible into evidence. *Aquaslide*, 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509. If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Elec. Serv.*, 809 F.2d at 631. In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

Applying this standard, the Court finds and concludes that Plaintiff satisfied his initial

10

burden to identify those portions of the record which it believes establish an absence of material fact. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d at 630. Defendant's admissions in his answer, and Plaintiff's SOUF listing listed the above-quoted facts, and the accompanying affidavits of persons with personal knowledge to provide foundation for attached exhibits, and expertise and expert reports, satisfy Plaintiff's initial burden. The affidavits which Defendant contends are hearsay are permitted, contemplated, and even required to satisfy the moving party's initial burden.

The burden shifted to the Defendant opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d at 1103-04. Defendant failed to satisfy that burden when he failed to file a Statement of Genuine Issues as required by Mont. LBR 7056-1(a)(2).

To demonstrate that a genuine factual issue exists the Defendant was required to produce affidavits which are based on personal knowledge, and the facts set forth therein must be admissible into evidence. *Aquaslide*, 85 B.R. at 547. Defendant produced no affidavits based on personal knowledge of the facts of the instant adversary proceeding in support of his objection. Defendant argues that a factual disputes exist between the parties regarding whether he was legally intoxicated while operating the motorcycle, but he cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247-48, 106 S.Ct. at 2510. Based upon Defendant's failure to show that genuine issues of material fact exist, the Court finds that no genuine issues of material fact exist, and the inquiry shifts to whether the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

The Court finds that the factual evidence of Defendant's unlawful intoxication when he injured the Plaintiff while operating a motor vehicle is more than sufficient, based upon the affidavits, reports, and depositions offered in support of Plaintiff's SOUF Facts 11, 12 and 13. The Court finds and concludes that Plaintiff has satisfied his burden under § 523(a)(9) to show that he is entitled to judgment as a matter of law.

Although not pled, the Court notes another strong policy reason why the Plaintiff's debt must be excepted from discharge. In the Ninth Circuit debts arising from restitution orders are nondischargeable under 11 U.S.C. § 523(a)(7) because of state "penal and rehabilitative interests." *In re Findley*, 593 F.3d 1048, 1052 n. 3 (9th Cir. 2010) (citing *Kelly v. Robinson*, 479 U.S. 36, 53, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986)). The Defendant argues that he was no longer subject to the restitution requirement because it was reduced to a civil judgment. That civil judgment is attached to Defendant's objection (Dkt. 17) as Ex. 3. The judgment in Ex. 3 is preceded by an order of the Montana Ninth Judicial District Court, Toole County, Cause No. DC-01-028, dated August 11, 2009. The last sentence of that order read: "The Court hereby enters Judgment in favor of the victim, Shane Bucher, *in the amount of the unpaid restitution*, which is $29,463.70, pursuant to *Mont. Code Ann.* § 46-18-249." (Emphasis added).

Rule 15(b)(2), FED. R. CIV. P., requires that an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. Defendant's arguments regarding restitution, in this Court's view, imply his consent that § 523(a)(7) be treated as if raised in the pleadings. Defendant failed to pay the restitution except for a single payment. The balance owed on the $29,463.70 judgment, plus unpaid interest, is nondischargeable.

12

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

2. This is a core proceeding to determine dischargeability of particular debt under 28 U.S.C. § 157(b)(2)(I) and 11 U.S.C. § 523(a)(9).

3. The Plaintiff satisfied his burden of showing by a preponderance of the evidence that the Defendant/Debtor Patrick H. Hughes caused the Plaintiff personal injuries while operating a motor vehicle while the Debtor was unlawfully intoxicated, and Plaintiff thus is thus entitled to Judgment excepting the unpaid balance of the $29,463.70 judgment entered on November 13, 2009, in the Montana Ninth Judicial District Court, Toole County, Cause No. DC-01-028, plus interest, from Hughes' discharge under § 523(a)(9), and also under § 523(a)(7).

**IT IS ORDERED** a separate Order shall be entered overruling Hughes' objection (Dkt. 17) and granting Plaintiff's amended motion for summary judgment (Dkt. 12); and Judgment shall be entered for the Plaintiff and against the Defendant/Debtor Patrick H. Hughes providing that the unpaid balance of the $29,463.70 judgment entered on November 13, 2009, in the Montana Ninth Judicial District Court, Toole County, Cause No. DC-01-028, plus interest, shall be and is excepted from Hughes' discharge under 11 U.S.C. § 523(a)(9), and also under § 523(a)(7).

BY THE COURT

_____
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

13